**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| THOMAS FARRUGIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 2:04-cv-235-JMS-WGH |
| | ) | |
| T. R. BARNETT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Entry Discussing Motion for Summary Judgment**

For the reasons explained in his Entry, the defendants' motion for summary judgment must be **granted**.

**I. Introduction**

As used in this Entry, "Farrugia" refers to the plaintiff, Thomas Farrugia, "BOP" refers to the Federal Bureau of Prisons, "USP" refers to the United States Penitentiary at Terre Haute, Indiana, "FCC Florence" refers to the Federal Correctional Complex in Florence, Colorado, "CSR" refers to Correctional Systems Officer, "PSR" refers to a sentenced offender's presentence report, "SOR" refers to the statement of reasons issued in connection with the imposition of an offender's sentence, and "*Bivens*" refers to the Supreme Court's decision in *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 38 (1971). In addition, "the amended complaint" refers to both the amended complaint and the second amended complaint and "defendants" refers to Scott Sussman and T.R. Barnett.[1]

Farrugia complains that in April 20, 2004, some of his legal materials were seized and he was not given an itemized receipt. He claims that he was thereafter denied access to the seized legal materials and that as a result he was not able to pursue his

---

[1] Former USP Correctional Counselor Eric White—now retired—joins as a movant in the motion for summary judgment. Although the court concluded that Farrugia abandoned any claim against White in the course of responding to directions in paragraph 5 of the Entry of September 14, 2009, including him as a party at this point would not alter the court's resolution of the motion for summary judgment. His affidavit, moreover, is part of the evidentiary materials submitted by the defendants in support of their motion for summary judgment. The clerk shall terminate Eric White as a defendant.

many legal claims. He contends that the actions on the part of the defendants were done in retaliation for his involvement in a civil rights case filed against employees of the FCC Florence facilities, and because he filed "grievances and complaints against staff & USP/BOP policies."

## II. Summary Judgment

### A. Standard and Methodology

"The primary purpose of summary judgment is to isolate and dispose of factually unsupported claims." *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001). "As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103 (7th Cir. 2008) (citations omitted).

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).

The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Harney v. Speedway SuperAmerica,* LLC, 526 F.3d 1099, 1104 (7th Cir. 2008) (citing cases). "The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact ." Fed.R.Civ.P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4).

If a party "fails to properly address another party's assertion of fact . . . the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

### B. Farrugia's Responses

Farrugia is proceeding without counsel. On account of this, he was notified of the nature of the defendants' motion for summary judgment, of the proper manner in which to respond, and of the consequences of failing to respond properly. *See Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992)(a district court should not grant summary judgment against a pro se litigant who was not adequately apprised of the steps necessary to proceed to trial). Although as a pro se litigant his filings are to be liberally construed, his "pro se status doesn't alleviate his burden on summary judgment." *Arnett v. Webster*, 2011 WL 4014343, *14 (7th Cir. 2011); *see also Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 359-60 (7th Cir. 2009); *Greer v. Bd. of Educ.,* 267 F.3d 723, 727 (7th Cir. 2001).

In order to be clear concerning the evidentiary record, comment is made concerning the nature and effect of Farrugia's responses to the motion for summary judgment.

The defendants' motion for summary judgment referred to in this Entry was filed on March 14, 2011. (An earlier motion for summary judgment has been resolved and lead to the narrowing of Farrugia's claims to those (1) he still wished to assert, and (2) which had been exhausted as required by the Prison Litigation Reform Act, 42 U.S.C. §1997e(a).)

Farrugia requested and received extensions of time in which to respond to the motion for summary judgment.

The briefing dynamics culminated on July 11, 2011, at which time the court made various rulings, including the following:

> The record establishes that the plaintiff has everything he needs to file a meaningful response to the defendants= motion for summary judgment except a final deadline by which to do so. He will be given such deadline now. The plaintiff shall have **through July 18, 2011,** in which to make a response to the defendants= motion for summary judgment. . . . The court reminds plaintiff of the briefing requirements of Local Rule 56.1 as to the form and page limits of his response brief. This schedule accords the plaintiff the full 120 days of delay he sought through his motion to stay mentioned in Part IV of this Entry.

Farrugia's response to the motion for summary judgment was filed on July 18, 2011. The defendants' reply to that response was filed on August 4, 2011. This was followed with the filing of Farrugia's surreply on August 18, 2011. The surreply was not authorized, and likely was not necessary, but in the circumstances of this very turbulent case it has been considered.

In the aggregate, Farrugia responses to the motion for summary judgment consist of a 3-page brief, a 2-page brief, a 1-page declaration, and a copy of an administrative grievance he signed on August 13, 2011. The responses do not include, and are not accompanied by, the S*tatement of Material Facts in Dispute* required by Local Rule 56.1(b). Additionally, the responses to the motion for summary judgment are conclusory and argumentative. The responses rest on hearsay and deal with some matters not relevant to the claims on which the action has proceeded. A court "may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009)(citing cases). The opposing party's burden cannot be met with conclusory statements or speculation. *See Greer v. Bd. of Educ.,* 267 F.3d 723, 727 (7th Cir. 2001)(self-serving legal conclusions are not statements of fact and do not suffice as a proper response to a Rule 56.1 statement); *Cliff v. Bd. of Sch. Comm'rs*, 42 F.3d 403, 408 (7th Cir. 1994) (citing *McDonnell v. Cournia*, 990 F.2d 963, 969 (7th Cir. 1993)). Expressions of an affiant's opinion or his legal conclusion "are totally ineffectual, and are not to be given any consideration or weight whatsoever." *G.D. Searle & Co. v. Chas. Pfizer & Co., Inc.,* 231 F.2d 316, 318 (7th Cir. 1956); *see also Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

Each of the three signed documents (excluding the grievance) in Farrugia's responses purports to be sworn to as "true and correct." Thus, the jurats of these documents are deficient: The language of attestation of each is this: "This is a true and correct statement sworn to under penalties of perjury." This language does not meet the evidentiary standard set forth in Rule 56(e)(1). *See Alpert v. United States,* 481 F.3d 404, 409 (6th Cir. 2007) (holding that the affiant's "statement . . . based upon his 'belief' . . . did not demonstrate the personal knowledge required by Fed.R.Civ.P. 56(e)"); *Stewart v. Booker T. Washington Ins.,* 232 F.3d 844, 851 (11th Cir. 2000) ("upon information and belief" insufficient); *Fowler v. Southern Bell Tel. and Tel. Co.,* 343 F.2d 150, 154 (5th Cir. 1965) ("knowledge, information and belief" insufficient); *Robbins v. Gould,* 278 F.2d 116, 118 (5th Cir. 1960) ("knowledge and belief" insufficient). Materials which do not comply with the standard of Rule 56(e) are disregarded. *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003)(⁅[A] party's failure to comply with summary judgment evidentiary requirements is traditionally remedied . . . by excluding the non-conforming submission and deeming the opposing party's proposed findings of fact admitted and then determining whether those facts entitle the moving party to judgment as a matter of law.⁆).

The sum and substance of Farrugia's responses to the motion for summary judgment, therefore, is this: He has failed to comply with the court's Local Rules regarding such a motion. He has failed to supply information which meets the evidentiary standard applicable to such a motion. And he has failed even to submit this information in a form which could create a genuine issue of fact. In both form and content, therefore, and lacking compliance with Local Rule 56.1(b), Farrugia's response to the motion for summary judgment is inadequate. The consequence of these circumstances is that he has conceded to the defendants' version of the events. *Smith*

*v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see also Yancick v. Hanna Steel Corp.,* 2011 WL 3319568, at *11 (7th Cir. Aug. 3, 2011); *Wackett v. City of Beaver Dam,* 642 F.3d 578, 582 n.1 (7th Cir. 2011). This does not alter the standard for assessing a Rule 56(a) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

The treatment of Farrugia's responses which remains is as a narrative statement of his arguments which may elucidate the issues, but which cannot serve as the basis for creating an issue of fact. *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713, 720 (3d Cir. 1989) ("[S]tatements made in briefs are not evidence of the facts asserted."); *see also National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 268 (7th Cir. 1996) (nonmovant's opposition to motion for summary judgment raised more issues and posed additional questions, but included no counter affidavits or exhibits which might have raised a genuine issue of material fact).

### III. Discussion

#### A. Applicable Law

In acting on a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo,* 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson,* 477 U.S. at 248).

*Bivens* "authorizes the filing of constitutional tort suits against federal officers in much the same way that 42 U.S.C. ' 1983 authorizes such suits against state officers." *King v. Federal Bureau of Prisons,* 415 F.3d 634, 636 (7th Cir. 2005). Claims asserted under a *Bivens* theory are brought pursuant to subject matter jurisdiction conferred by 28 U.S.C. § 1331, which provides that "[t]he District Courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." A prerequisite to maintaining an action under ' 1331 is that the plaintiff "must allege a violation of the United States Constitution or a federal statute." *Goulding v. Feinglass,* 811 F.2d 1099, 1102 (7th Cir. 1987), *cert. denied,* 107 S. Ct. 3215 (1987).

There are two constitutional interests implicated by Farrugia's claims. The first is his right to access to the courts, which is "[a] prison inmate's . . . most fundamental right . . . . 'All other rights of an inmate are illusory without it, being entirely dependent for their existence on the whim or caprice of the prison warden.'" *DeMallory v. Cullen,* 855 F.2d 442, 446 (7th Cir. 1988) (quoting *Adams v. Carlson,* 488 F.2d 619, 630 (7th Cir. 1973)). The second interest is his claim of retaliation, which is actionable if prison officials retaliate against prisoners who file nonfrivolous grievances. *See Hoskins v.*

*Lenear,* 395 F.3d 372, 375 (7th Cir. 2005); *Hasan v. U.S. Dep't of Labor,* 400 F.3d 1001, 1005 (7th Cir. 2005); *Walker v. Thompson,* 288 F.3d 1005, 1009 (7th Cir. 2002).

### B. Material Facts

The following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts are presented in the light reasonably most favorable to Farrugia as the non-moving party with respect to the defendants' motion for summary judgment.

- Farrugia is a convicted inmate placed in the custody of the BOP to serve a life sentence for violations of 21 U.S.C. §§ 841(a)(1), 846, 841(b)(1), and 18 U.S.C. § 2. This sentence was imposed by the United States District Court for the Eastern District of California on November 7, 1994. He arrived at the USP on April 1, 2004.

- At the times pertinent to Farrugia's claims in this case the defendants were employed at the USP by the BOP. Defendant Barnett retired on January 3, 2007. Prior to that time he was the Inmate Systems Manager at the USP. In that position, he oversaw the Mail Room operations, the Records Office, and Receiving and Discharge ("R & D") functions. The R & D functions include the in-processing of inmates and their property. Defendant Scott Sussman was a Unit Manager at the USP from January 26, 2004, until September 2, 2006. As a Unit Manager, Sussman supervised members of a Unit Team, which was collectively responsible for various aspects of inmate programing and everyday life.

- The defendants and Eric White never had a discussion with each other about Farrugia's access to his legal materials which were required by BOP policy to be sequestered from an inmate. The defendants and Eric White also never asked or ordered any USP staff to retaliate against Farrugia because of his litigation against staff. No defendant intentionally denied Farrugia access to his legal documents in retaliation for his legal activities. The same is true of Eric White.

- The defendants and Eric White never cited Farrugia for any disciplinary infractions, nor did they ask any other officers to cite Farrugia with disciplinary infractions. The defendants and Eric White did not conspire with anyone in order to retaliate against Farrugia for filing administrative remedies or having been named in a lawsuit. Farrugia filed approximately 73 remedy requests since arriving at the USP.

- The "Cowboys lawsuit" is a lawsuit brought by Farrugia against BOP employees Mike Lavelee, Rode Schultz, Ken Shato, David Pruyne, Robert Verbickas, Brent Gill, and James Bond at the FCC Florence. Neither defendant, nor Eric White, know any of the defendants in the Cowboys lawsuit and did not deliberately aid any such defendants in that case.

- In 2002, the BOP amended its national policy which restricted inmates from possessing copies of their PSRs and their SORs in their personal cells or possession. In 2003, a directive was issued at the USP which restricted inmates from possessing copies of their transcripts in their personal cells. Any such restricted documents or transcripts were maintained by the Unit Team, which would provide the inmate access to them upon request. On November 15, 2004, a decision was made to allow inmates at the USP to retain "publicly available legal materials" subject to a determination in individual cases that inmate possession of particular materials would be detrimental or pose a threat to institution security and good order. This decision did not change to prohibition against inmates possessing their PSRs or their SORs. These policies are collectively referred to herein as "the restricted document policies."

- Farrugia's legal property arrived at the USP on April 6, 2004, and on April 20, 2004, that property was distributed consistent with the foregoing policies.[2] That is, as to each item a determination was made pursuant to the restricted document policies whether Farrugia would be allowed to take possession of the item or if it was an item to be sent to Farrugia's Unit Team staff to allow Farrugia access. Farrugia's property included approximately 66 inches of legal materials. Farrugia's property also included: PSIs that measured in total approximately one inch; a copy of a SOR, court transcripts totaling approximately 20 inches; and docket sheets totaling approximately one inch. The 66 inches of legal materials could be released to Farrugia. The remaining materials—the PSIs, the SORs, court transcripts, and docket sheets—were treated as restricted documents. The restricted document policy was explained to Farrugia. This included information for how he would request access to the restricted documents. On April 23, 2004, Unit Staff picked up the restricted documents from R&D and stored them in a secure area in the R & D Unit. Neither at that time or at any subsequent time did the defendants or any custodian of Farrugia's restricted documents shred, destroy or damage any of those documents.

- When an inmate needed to include restricted documents with outgoing mail, that request would be presented to Unit Team staff—a counselor. A photocopy of the restricted document would be made and the counselor would arrange for the copy to be placed in the outgoing mail. The envelope would be sealed in the presence of a staff member and placed directly in the outgoing mail to ensure that the restricted documents policy was followed. An inmate's request to be supplied with a photocopy of a restricted document for possession in the inmate's cell would be denied as a violation of the restricted documents policy.

- Thereafter, because of Farrugia's complaints about not having sufficient access to his restricted documents, special arrangements were made to transfer those documents to the law library. This occurred on September 15, 2004, and

---

[2] If the item was contraband, Farrugia would not be allowed to either possess or store it.

following that date it was the responsibility of the Education Department to provide Farrugia with greater access to the documents upon request.

- Once Farrugia's restricted documents were received by the Education Department, they were stored in a secured storage area, bearing his name and registration number. Farrugia, and other inmates who had restricted documents, would be allowed to view their documents in a classroom right across from the librarian's office. The room was large enough to accommodate more than one inmate at a time. There was no limit to Farrugia's ability to view the restricted documents. Inmates without restricted documents were not allowed in this room.

- Education Technician, M. E. Collins ("ET Collins") worked in the law library during the time at issue. The law librarian office occupied by ET Collins had windows along the hallway facing the testing room and it was easy for her to observe inmates as they reviewed their restricted documents. Each time an inmate came to the law library to review his restricted documents, staff working were instructed to log the time in and the time out. The purpose of the log was to keep a record of an inmate's access to his records.

- Farrugia was provided access to his restricted documents in the R & D Unit on at least three occasions: two different times on April 29, 2004, and one time on May 6, 2004. Farrugia viewed the restricted documents in the law library on four occasions: on September 15, 2004, wherein he asked that his materials be measured and then did not review any of the materials; on October 7, 2004, for six minutes; on October 14, 2004, for one hour and 18 minutes; and on October 31, 2004, for 50 minutes.

- Farrugia complained to ET Collins that there should be more documents delivered to the Education Department and that documents were missing. However, Farrugia was never able to identify what documents were missing. Farrugia was also upset because ET Collins would not let other inmates view his restricted documents. Collins followed BOP and USP Terre Haute policy that prohibited inmates from possessing or allowing other inmates to view the restricted documents. ET Collins would not make copies of the restricted documents, pursuant to the restricted documents policies. There were no restrictions on the number of pencils or amount of paper an inmate could bring to the law library to review his documents. An inmate could take notes regarding the documents and at a later time share his notes with others, but inmates other than the named inmate were not allowed in the room to view the restricted documents. Inmate law clerks employed in the library could not view the restricted documents.

- The defendants and Eric White never conspired with anyone, including each other, to obstruct Farrugia from obtaining access to his restricted documents. The defendants and Eric handled Farrugia's restricted documents and his access to his restricted documents in accordance with the restricted documents policies.

The evidentiary record includes information concerning the Cowboys lawsuit and other litigation to which Farrugia was a party.

- The Cowboys lawsuit was brought by Farrugia in the United States District Court for the District of Colorado, docketed as *Farrugia v. Shultz*, No. 1:01-cv-0498-MSK-BNB. In that case, the trial court rejected Farrugia's complaint that he could not pursue his legal claim; the court explained that "access to the legal papers in question was not necessary to comply with the Court's Order" and noted that it had issued "at least three Orders . . . noting the irrelevance of the seized files to the matters at issue in this case." Ultimately, that court dismissed the Cowboys lawsuit for failure to prosecute.

- Farrugia filed a Freedom of Information Act lawsuit in the United States District Court for the District of Columbia. This lawsuit was docketed as *Farrugia v. EOUSA*, No. 1:04-cv-024-PLF, and in this case all of Farrugia's motions for enlargements of time were granted. The case was decided on the merits.

- Farrugia filed post-conviction motions in his criminal case, No. 1:92-cr-5164-OWW-5. In denying his "Motion to Expand the Record with Sworn Affidavits, Statements and Documents That Suport [SIC] Movant's Actual Innocence" and his "Motion to Reopen Section 2255 Proceedings Pursuant to Fed. R. Civ. P. 60(b)," the trial court in Farrugia's criminal action noted that the testimony of a co-defendant who did not interact with Farrugia would not be of assistance to his defense. In addition, that court wrote: "After careful review of the entire record, including the transcripts, and consideration of the motion and responses, the court concludes that counsel's performance was not deficient." Farrugia's motions were all considered on the merits.

The evidentiary record contains a reference to No. 3:85-cr-0383-B. Although it is not clear that any impediment relating to No. 3:85-cr-0383-B is included in Farrugia's claim, the record shows that such a contention would be without merit. This conclusion is reached because Farrugia's claims in No. 3:85-cr-0383-B were completely litigated, including an appellate order affirming the denial of Farrugia's writ on November 1, 2002, long before Farrugia arrived at the USP. The appeal, docketed as No. 03-55044, was concluded on June 13, 2004, also before Farrugia arrived at the USP.

### C. Analysis

*Access to the Courts.* The Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons who are trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977). Such a right "is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Wolff v. McDonnell,* 418 U.S. 539, 579 (1974). The right of access to the courts is also

recognized as one aspect of the First Amendment right to petition the government for grievances. *See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972); *Taylor v. Sterrett,* 532 F.2d 462, 470-72 (5th Cir. 1976).

To establish a violation of the right to access to the courts, a prisoner must allege facts sufficient to show that: (1) a nonfrivolous legal attack on his conviction, sentence, or conditions of confinement has been frustrated or impeded; and (2) he has suffered an actual injury as a result. *Lewis v. Casey,* 518 U.S. 343, 353-55 (1996). An "actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.,* at 348. *Lewis* also clarified that the actual injury requirement reaches only as far as the right of access in the first place, *i.e.,* the interference with "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id.*, at 356. Additionally, the right of access to the courts is only a right to bring complaints to the federal court and not a right to discover such claims or to litigate them effectively once filed with the Court. *See Id.,* at 354–55.

In this case, there is no evidence whatsoever that the adverse outcomes encountered with any of the dispositions recited above was the result of any actions or mismanagement of Farrugia's legal property, including his restricted documents, while at the USP. There is also no evidence that either defendant or Eric White mishandled Farrugia's legal property in a manner which interfered with Farrugia's capability to bring challenges to his sentences or the conditions of his confinement. *See Ortloff v. United States,* 335 F.3d 652, 656 (7th Cir. 2003) (explaining that allegations sufficient to plead specific prejudice might include missed court deadlines, failure to make timely filings, or dismissal of legitimate claims); *Tarpley v. Allen County, Indiana,* 312 F.3d 895, 899 (7th Cir. 2002) (without a showing "that the defendants prevented him from pursuing a nonfrivolous legal action," a prisoner cannot prove a constitutional violation).

In § 1983 cases, and by extension in this *Bivens* action, "the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forth with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). Farrugia has failed to meet that burden as to his claim of denial of access to the courts. The defendants are therefore entitled to the entry of summary judgment as to such claim.

*Retaliation.* A prisoner has a right under the First Amendment to file grievances and lawsuits complaining about the conditions of his or her confinement without retaliation by prison officials for the exercise of that right. *See Babcock v. White,* 102 F.3d 267, 274-75 (7th Cir. 1996). Motivation is a question of fact that turns on evidence. *See Slusher v. N.L.R.B.,* 432 F.3d 715, 726 (7th Cir. 2005); *SCA Tissue N. Am. LLC v. N.L.R.B.*, 371 F.3d 983, 988-89 (7th Cir. 2004). There is evidence of the defendants' motive insofar as it relates to Farrugia's claims, and it could support only one conclusion: Neither defendant, nor Eric White, acted or conspired to retaliate against Farrugia for litigating or for filing administrative grievances. The defendants' motive, and that of Eric White, was to follow the restricted documents policy and other proper BOP

procedures at the USP. A prisoner must show more than his personal belief that he is the victim of retaliation, *Woods v. Edwards,* 51 F.3d 577, 580 (5th Cir. 1995), yet that is the extent of Farrugia's presentation.

A prisoner can state a claim for retaliatory treatment by alleging a chronology of events from which retaliation can be inferred. *See Johnson v. Stovall,* 233 F.3d 486, 489 (7th Cir. 2000). To succeed on such a claim here would require that Farrugia show that: (1) his complaints were protected activity under the First Amendment; (2) the defendants' actions would deter protected activity in the future; and (3) his complaints motivated the defendants' actions. *See Watkins v. Kasper,* 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009).

The defendants have negated the third of the foregoing elements. It is therefore unnecessary to discuss the first two. "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir. 1996).

### IV. Conclusion

Although "'federal courts must take cognizance of the valid constitutional claims of prison inmates,'" *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996) (quoting *Turner v. Safley,* 482 U.S. 78, 84 (1987)), Farrugia has presented no claim of that nature in this case. Farrugia's dissatisfaction with his legal activities or endeavors while at the USP does not present a triable issue of fact.

AWhen the moving party has met the standard of Rule 56, summary judgment is mandatory.@ *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008)(citing cases). That is what has occurred here. For the reasons explained in this Entry, therefore, the defendants' motion for summary judgment [200] is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 09/27/2011

*[Signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana